RECEIVED
AND FILED

OCT 26 6 01 AM '10

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

# TRANSMITTAL FORM

**TO:** U.S. DISTRICT COURT
333 Las Vegas Blvd., So., 1334, Las Vegas, NV 89101

**FROM:** BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA - SOUTHERN
District Office No. 0978/2

**CASE NAME** USA COMMERCIAL MORTGAGE COMPANY

**BANKRUPTCY NO** BK-S 06-10725-LBR

**ADVERSARY NO** ADV 08-1135-LBR

**PLAINTIFF-USACM LIQUIDATING TRUST, USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC, USA CAPITAL FIRST TRUST DEED FUND, LLP,**

**DEFENDANTS-WELLS FARGO BANK**

**BANKRUPTCY JUDGE** LINDA B RIEGLE

**DATE OF ENTRY CERTIFYING MATTER TO DISTRICT COURT**

**DATE BANKRUPTCY FILED** 4/13/06

**DATE OF TRANSMITTAL** 10/26/2010

The entire case docket can be viewed electronically at www.nvb.uscourts.gov through PACER.

M. Lyons
DEPUTY CLERK

2/10

**ALLAN B. DIAMOND**
TWO HOUSTON CENTER, 15TH FLOOR
909 FANNIN ST.
HOUSTON, TX 77010

**ERIC D. MADDEN**
1201 ELM STREET SUITE 3400
DALLAS, TX 75270

**ERIN E. JONES**
909 FANNIN, STE 1500
HOUSTON, TX 77010

**LISA SHEAUFENG TSAI**
REID DAVIS LLP
4301 WESTBANK DRIVE
BUILDING B, SUITE 230
AUSTIN, TX 78746

**WILLIAM T. REID, IV**
REID DAVIS LLP
7800 SHOAL CREEK BOULEVARD
SUITE 210 WEST
AUSTIN, TX 78757

**Berry D. Spears**
Fulbright & Jaworski L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX 78701-2978

**DEAN V. FLEMING**
FULBRIGHT & JAWORSKI L.L.P.
300 CONVENT ST, STE 2200
SAN ANTONIO, TX 78205-3792

**KENT F. LARSEN**
1935 VILLAGE CENTER CIRCLE
LAS VEGAS, NV 89134

**MICHAEL W. O'DONNELL**
FULBRIGHT & JAWORSKI, LLP
300 CONVENT ST #2200
SAN ANTONIO, TX 78205-3792

**STEVE A. PEIRCE**
FULBRIGHT & JAWORSKI L.L.P.
300 CONVENT ST, STE 2200
SAN ANTONIO, TX 78205-37

**The court adopts the proposed findings and fact and conclusions of law as its own and makes the recommendation set forth in paragraphs 96 and 97 herein. By this order, the court certifies this matter to the District Court.**

**Entered on Docket**
**September 30, 2010**

**Hon. Linda B. Riegle**
**United States Bankruptcy Judge**

Dean V. Fleming, TX State Bar No. 07122100
Email: dfleming@fulbright.com
Steve A. Peirce, TX State Bar No. 15731200
Email: speirce@fulbright.com
Michael W. O'Donnell, TX State Bar No. 24002705
Email: modonnell@fulbright.com
Thomas A. Countryman, TX State Bar No. 04888100
Email: tcountryman@fulbright.com
Ronald D. Smith, TX State Bar No. 24056344
Email: rsmith@fulbright.com
**FULBRIGHT & JAWORSKI L.L.P.**
300 Convent Street, Suite 2200
San Antonio, TX 78205-3792
Telephone: (210) 224-5575
Facsimile: (210) 270-7205

Berry D. Spears, TX State Bar No. 18893300
Email: bspears@fulbright.com
**FULBRIGHT & JAWORSKI L.L.P.**
600 Congress Avenue, Suite 2400
Austin, TX 78701
Telephone : (512) 474-5201
Facsimile: (512) 536-4598

Kent F. Larsen, Esq., Nevada Bar No. 3463
Email: kfl@slwlaw.com
**SMITH LARSEN & WIXOM**
1935 Village Center Circle
Las Vegas, NV 89134
Telephone: (702) 252-5002
Facsimile: (702) 252-5006
ATTORNEYS FOR WELLS FARGO BANK, N.A.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | |

| | |
|---|---|
| USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Plaintiff,<br>v.<br><br>WELLS FARGO BANK, N.A.<br>Defendant. | Adversary No. 08-01135<br><br>**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEFENDANT'S MOTION UNDER 28 U.S.C. § 157(C)(1) AND FED. R. BANKR. PROC. 7052(C)(2)** |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor.<br>In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor.<br>In re:<br>USA SECURITIES, LLC,<br>Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. Case No. BK-S-06-10725 LBR |

Defendant's Motion under 28 U.S.C. § 157(C)(1) and FED. R. BANKR. PROC. 7052(c)(2) [Dkt. # 356] (the **"Motion"**) came on for hearing on August 2, 2010 at 10:30 A.M. The Motion was filed following trial before the Court of the above-entitled action from July 7, 2010 until July 16, 2010 after the close of Plaintiff USA Capital Diversified Trust Deed Fund, LLC's (**"DTDF"**) case-in-chief. The Court, having considered the Motion, along with the response, reply, testimony at trial, and exhibits offered into evidence at trial, and having heard the arguments of counsel made at the hearing on August 2, 2010, hereby submits the following proposed findings of fact and conclusions of law to the District Court pursuant to 28 U.S.C. § 157(c)(1) and FED. R. BANKR. P. 7052(c)[1] recommending the adjudication of all claims and causes of action asserted by DTDF in this lawsuit in favor of Wells Fargo Bank, N.A. (**"Wells Fargo"**).

On August 2, 2010, the Court announced its findings orally on the record. *See* Hearing Transcript, Aug. 2, 2010 (**"Transcript"**). The findings made in the Transcript are hereby incorporated by reference. Any finding of fact that may be considered a conclusion of law is hereby adopted as such. Any conclusion of law that may be considered a finding of fact is hereby adopted as such.

[1] Incorporating FED. R. CIV. P. 52(c).

## I. CAUSES OF ACTION

1. This is a not a core proceeding under 28 U.S.C. § 157(b), and the case has not been referred to the Court for final adjudication pursuant to 28 U.S.C. § 157(c)(2).

2. DTDF asserted causes of action against Wells Fargo for Aiding and Abetting Fraud, Aiding and Abetting Breaches of Fiduciary Duty, Civil RICO under 18 U.S.C. § 1962(c), and Civil RICO Conspiracy under 18 U.S.C. § 1962(d).

3. DTDF voluntarily elected not to pursue its cause of action for Civil RICO under 18 U.S.C. § 1962(c), conceding that the cause of action "does not exist" as to Wells Fargo.

4. Accordingly, the only remaining causes of action asserted by DTDF are: (1) Aiding and Abetting Fraud; (2) Aiding and Abetting Breaches of Fiduciary Duty; and (3) Civil RICO Conspiracy under 18 U.S.C. § 1962(d).

## II. CONCLUSIONS OF LAW

5. As to all causes of action, collective knowledge is insufficient; rather, the law requires that "the state of mind 'actually exist' in at least one individual and not be imputed on the basis of general principles of agency." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 241 (5th Cir. 2010).

### A. Aiding and Abetting

6. Nevada law recognizes the tort of aiding and abetting, as found in *Dow Chemical Co. v. Mahlum*, 970 P.2d 98 (Nev. 1998), *overruled in part on other grounds*, *GES, Inc. v. Corbitt*, 21 P.3d 11 (Nev. 2001).

#### *(i). Elements of Aiding and Abetting.*

7. The elements of a cause of action for aiding and abetting are (1) another person committed a tort that injured the plaintiff; (2) the defendant was aware of its role in promoting the tort at the time it provided assistance; and (3) the defendant knowingly and substantially assisted the tortfeasor in committing the tort that injured the plaintiff. *Mahlum*, 970 P.2d at 112.

8. The second and third elements should be weighed together, meaning that the greater evidence supporting the second element requires less evidence of the third and vice versa. *Mahlum*, 970 P.2d at 112.

#### *(ii). Actual Knowledge*

9. Nevada would follow California law and require actual knowledge that the primary actor's conduct constituted a breach of duty, that is, actual knowledge of the specific primary wrong. *Mahlum*, 970 P.2d at 113; *Casey v. U.S. Bank Nat'l Ass'n*, 25 Cal.Rptr.3d 401, 406 (Cal. Ct. App. 2005).

10. Actual knowledge requires more than a vague suspicion of wrongdoing. *In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006); *Casey*, 25 Cal.Rptr.3d 401.

11. The requirement is actual knowledge and, therefore, evidence establishing negligence – that is that Wells Fargo should have known – will not suffice. Mere general awareness is also not sufficient.

12. Specific intent is not required. *In re First Alliance Mortgage Co.*, 471 F.3d at 993.

13. The requisite knowledge may be shown by circumstantial evidence but knowledge must come at the time of the tortious act. *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 535 (6th Cir. 2000).

14. An inference that a defendant knew of an underlying fraud cannot be drawn from evidence that it did not follow its own rules. *Chance World Trading, E.C. v. Heritage Bank of Commerce*, 438 F.Supp.2d 1081, 1086 (N.D. Cal. 2005), *aff'd*, 263 Fed. Appx. 630 (9th Cir. 2008).

15. Knowledge of suspicious account activities, even possible money laundering, without more, does not give rise to liability for aiding and abetting. *Chance World Trading*, 438 F.Supp.2d at 1085 (citing *Casey*, 25 Cal.Rptr.3d at 411).

16. The fact that transfers out of accounts do not comport with bank rules or corporate law alone is insufficient to show that a defendant is aware of misuse of funds. *Chance World Trading*, 438 F.Supp.2d at 1085.

*(iii).* *Substantial Assistance.*

17. To amount to substantial assistance, the encouragement must take the form of a direct communication or conduct in close proximity to the primary actor-tortfeasor. *Mahlum*, 970 P.2d at 113.

18. Failure to act, failure to investigate, and lack of protest are not sufficient to demonstrate substantial assistance. *Mahlum*, 970 P.2d at 113.

19. While ordinary business transactions a bank performs for its customer can satisfy the substantial assistance element of an aiding and abetting claim, the plaintiff must show that a bank defendant actually knew that those transactions were assisting the customer in committing a specific tort. *In re First Alliance Mortgage Co.*, 471 F.3d at 995 (quoting *Casey*, 26 Cal. Rptr.3d at 406).

20. DTDF must show that Wells Fargo proximately caused the violation or, in other words, that the encouragement or assistance was a substantial factor in causing the tort. *Aetna Cas. & Sur. Co.*, 219 F.3d at 537.

21. Proximate cause must be established between the defendant's conduct and the loss incurred by the plaintiff. *In re Sovereign Partners*, 179 B.R. 656, 662 (D. Nev. 1995).

**B. RICO Conspiracy.**

22. To prevail in a cause of action for RICO conspiracy, a plaintiff must show that two or more people agreed to commit a substantive RICO offense, in this case, money laundering, and the defendant knew of and agreed to the overall objective of the RICO offense. *Chaney*, 595 F.3d at 239.

23. A person cannot be held liable for RICO conspiracy merely by evidence that he associated with the other co-conspirators or by evidence that places the defendant in a climate of activity that reeks of something foul. *Chaney*, 595 F.3d at 239.

24. A conspirator must at least know of the conspiracy and "adopt the goal of furthering or facilitating the criminal endeavor." *Chaney*, 595 F.3d at 239.

25. Plaintiff must present sufficient evidence that the defendant knew that the money funneled through the accounts was the product of unlawful activity and knew that at least one purpose was to conceal the ownership of the funds and agree to assist in achieving this objective. *Chaney*, 595 F.3d at 240.

26. One can establish the element of knowledge through deliberate ignorance, but that requires that the defendant was subjectively aware of a high probability of the existence of illegal conduct, but purposely contrived to avoid learning of the conduct. *Chaney*, 595 F.3d at 240.

## III. <u>FINDINGS OF FACT</u>

27. Joseph Milanowski (**"Milanowski"**) owed a fiduciary duty to DTDF.

28. Milanowski breached his fiduciary duty to DTDF when he failed to pay moneys collected on behalf of DTDF and its investors.

29. DTDF was not a customer of Wells Fargo with respect to the acts alleged in Plaintiff's First Amended Complaint.

30. DTDF has judicially admitted that DTDF was able to fulfill all of its banking needs without ever using any services from Wells Fargo.

31. Wells Fargo never received any fees directly from DTDF.

**A. Aiding and Abetting.**

32. While DTDF asserted causes of action for aiding and abetting fraud and aiding and abetting breaches of fiduciary duty, the Court will address both causes jointly due to its finding that DTDF did not prove elements common to both causes of action.

33. DTDF failed to prove elements two and three of their causes of action for aiding and abetting as specified by the Nevada Supreme Court, namely that "(2) the defendant was aware of its role in promoting the tort at the time it provided assistance; and (3) the defendant knowingly and substantially assisted the

tortfeasor in committing the tort that injured the Plaintiff." *Mahlum*, 970 P.2d at 112.

34. Wells Fargo did not act with actual knowledge of any underlying tortious conduct by Milanowski or any other employee and/or agent of USACM or DTDF, including the alleged looting of DTDF.

35. As Wells Fargo only provided usual and customary banking services, Wells Fargo did not substantially assist any underlying tortious conduct by Milanowski or any other employee and/or agent of USACM or DTDF.

36. As the issues of actual knowledge and substantial assistance are dispositive, the Court reserves any ruling on causation at this time.

*(i).* *General Findings Concerning Wells Fargo's Knowledge.*

37. Victoria Loob, (**"Loob"**), the head of USACM's loan servicing department and USACM's Secretary, was USACM's primary contact with Wells Fargo.

38. Loob never informed Wells Fargo of her concerns about related-party loans.

39. Wells Fargo did not have access to the general ledger of USACM or DTDF.

40. Linda Howe, USACM's accounting manager, never reported any discomfort with the transactions that she was handling for USACM or USACM's books and records to Wells Fargo.

41. The business operations of USACM demonstrate that millions of dollars were routinely transferred in connection with receipt of investments and the loaning of moneys.

42. Wells Fargo was not told of the *Ponzi* scheme.

43. Wells Fargo had no knowledge of the terms of the agreement between DTDF and USACM.

44. Wells Fargo had no knowledge of the loans in which DTDF participated.

45. Wells Fargo had no knowledge of USACM's payments or, more importantly, the lack thereof, to DTDF.

46. While Wells Fargo had a portion of DTDF's offering materials in its files, it did not have actual knowledge of the terms and the conditions under which loans could or could not be made.

*(ii).* *Findings of Fact Concerning Accounts Maintained in Las Vegas, Nevada.*

*a.* *Findings of Fact Concerning Allegations of Commingling between the Accounts Entitled USA Commercial Mortgage Company Investors Trust Account and Collection Trust Account.*

47. Among the number of accounts that USA Commercial Mortgage Company (**"USACM"**) established with Wells Fargo were accounts that were ultimately entitled Investors Trust Account (**"USACM ITA"**) and Collection Trust Account (**"USACM CTA"**).

48. The transfer of funds from USACM ITA to USACM CTA was a breach of duty to all investors in USACM, not merely to DTDF.

49. USACM ITA and USACM CTA were often referred to by number or merely "Collection Account" or "Investor Account" by Wells Fargo and USACM, but were from time to time referred to as Collection Trust Account and Investor Trust Account.

50. The fact that an account may be called Collection Trust Account or Investor Trust Account is not sufficient to demonstrate actual knowledge of a wrong, even if moneys are moved between the accounts, just as the same would be true with payroll and living trust accounts.

51. USACM ITA and USACM CTA were opened as general corporate accounts and specifically not as trust accounts.

52. The relevant account agreements for USACM ITA and USACM CTA provide for free transfer between and among accounts.

53. Some employees at Wells Fargo had a general awareness of the nature of the accounts established at Wells Fargo, and employees knew that from time to time money was transferred from USACM ITA to USACM CTA.

54. Wells Fargo had no knowledge of the source of payments made into USACM ITA or USACM CTA.

55. The fact that USACM moved funds from USACM ITA to USACM CTA does not evidence knowledge of Wells Fargo of any specific wrongdoing.

56. As acknowledged by DTDF's expert witness, John Burdiss, Wells Fargo cannot be charged with knowledge of the provisions of Nevada Revised Statutes Chapter 645B.

57. Moneys were moved between USACM ITA and USACM CTA a limited number of times.

58. Wells Fargo was entitled to presume that USACM's employees were fulfilling their fiduciary duties when making transfers between its accounts.

59. Witnesses explained that the manual approval of wire transfers was only intended to prevent mistakes, such as ensuring that names were correct and amounts were correct. The manual approval of wire transfers is not a process which is intended to catch wrongdoing, nor should it be. It is merely a process to prevent errors and make corrections, and there is no evidence to the contrary.

60. The fact that manual approvals of wires were made does not demonstrate any knowledge of Wells Fargo that Milanowski or any of the culpable insiders were violating their duties.

61. Wells Fargo may have advised Loob, at some point, that money was available in USACM ITA to cure a defect in USACM CTA; however, this did not cause a breach and demonstrates a lack of understanding by Wells Fargo of what the accounts truly were.

62. Loob did not advise Wells Fargo that USACM's accounts were overdrawn in March of 2003 or some later time because USACM was paying money that bèlonged to investors to other investors; rather, her testimony at trial was contradicted by her prior testimony. Her trial testimony is not credible in light of the fact that she hid the cause of the overdraft in January of 2003 from Wells Fargo.

63. The evidence does not demonstrate that Loob herself was sure that paying investors with money belonging to other investors was wrong.

*b. Findings of Fact Concerning the $11.425 Million Transaction.*

64. DTDF's account was not at Wells Fargo; rather, it was held at Nevada State Bank (**"NSB"**).

65. On January 2, 2003, DTDF's NSB" check #12727 was presented for deposit.

66. On January 2, 2003, USACM ITA check #1398 was presented for deposit.

67. NSB's return of check 12727 resulted in a $10,562,360.77 overdraft in USACM ITA.

68. On January 7, 2003, Wells Fargo contacted USACM and sent an overdraft notice to USACM as was Wells Fargo's standard practice.

69. Loob assured Michael Marcellette (**"Marcellette"**), a Wells Fargo employee, that the overdraft in USACM ITA was due to an error that would be corrected and, indeed, it was corrected by January 8, 2003.

70. On January 8, 2003, a wire transfer was made from NSB for $11.425 million into USACM ITA.

71. Loob specifically deceived Wells Fargo when she asserted that the failure of NSB to honor the check made out to USACM ITA was an error, even telling Marcellette that a letter from NSB would be forthcoming.

72. Loob never explained to Wells Fargo that USACM held checks payable to DTDF or that the held checks were the source of the failed deposit into USACM ITA.

73. USACM had accounts at Wells Fargo that gave immediate credit for deposits and there was nothing out of the ordinary with respect to the granting of immediate credit for the checks involved in the $11.425 million transaction.

74. There was nothing out of the ordinary when Wells Fargo called to learn the source of the problem with the $11.425 million transaction.

75. The checks made out to the DTDF account at NSB from USACM CTA were deposited on December 31, 2002. The next day, a Tuesday, was January 1. January 3 was a Thursday. January 7 was the following Monday. Accordingly, all of the events concerning the $11.425 million transaction occurred in a very short period of time and, indeed, money came in to cure the situation by January 8, 2003.

76. The nature of USACM's business, including payments out to developers and others on account of loans and repayments in principal and interest on loans, could routinely result in temporary overdraft situations.

77. Neither Wells Fargo nor anyone at Wells Fargo benefited from the actions Wells Fargo took with respect to the $11.425 million transaction, except to the extent that Wells Fargo received fees in the ordinary course of business, which were usual for these types of transactions and business.

c. *Findings of Fact Concerning Accounts Maintained in Temecula, California.*

78. The fact that David Fogg (**"Fogg"**) set up the accounts for 10-90, Inc. (**"10-90"**) and Mountain Vista, Inc. (**"Mountain Vista"**) at Wells Fargo's Temecula, California branch, was coincidental.

79. Wells Fargo had no knowledge of the source of funds coming into the 10-90 account.

80. The fact that one points out that one could have figured out the source of funds coming into the 10-90 account in hindsight does not demonstrate actual knowledge.

81. Wells Fargo's lack of knowledge is reinforced by DTDF's allegations that USACM's own in-house counsel, Thomas Rondeau, was not aware that DTDF was being looted.

82. Milanowski explained and booked the 10-90/Mountain Vista transfers as a loan from DTDF; accordingly, even if Wells Fargo had been aware that the funds were coming from DTDF, there is no evidence to indicate that Wells Fargo would have understood the transfers to be a breach of fiduciary duty.

83. There is no allegation or evidence that anyone with Wells Fargo in Temecula had any understanding of what DTDF was, what DTDF's business was, or what relationship DTDF had to the loan.

84. Wells Fargo's employees in Temecula were not aware of any duties owed to DTDF or that DTDF was being looted.

85. The receipt of investments and loaning of money is a legitimate business in and of itself, and there is nothing inherently suspicious about the transfer of funds.

86. Laurie Mills (**"Mills"**), who managed the Wells Fargo Temecula branch at the time Fogg chose to open the 10-90 and Mountain Vista accounts (Admitted Facts at No. 51), was credible and, in speaking to Fogg, she just wanted a general understanding of what he was doing.

87. Mills' actions were consistent with the typical actions of a salesperson, attempting to sell products and to understand what was happening with Wells Fargo's customers.

88. Wells Fargo did not have actual awareness that a breach of duty was occurring. All that happened was Wells Fargo allowing transfers to go from point A to point B and then to USA Investment Partners, LLC. Money laundering was occurring as a result of wire fraud by Joseph Milanowski; however, there was nothing to indicate to Wells Fargo at the time that money laundering or wire fraud was occurring.

89. The sole form of compensation that Wells Fargo received from the 10-90 and Mountain Vista transactions came through routine wire transfer fees.

## B. RICO Conspiracy.

90. The actions of Fogg and Wells Fargo do not satisfy the legal elements of a RICO conspiracy claim.

91. DTDF failed to prove that two or more people agreed to commit a substantive RICO offense.

92. DTDF failed to prove that Wells Fargo knew that at least one purpose of the transactions in the 10-90 and Mountain Vista accounts was to conceal the ownership of funds.

93. DTDF failed to prove that Wells Fargo knowingly agreed to process transactions to assist the overall objective of concealing the ownership of funds.

94. DTDF failed to prove that Wells Fargo adopted the goal of furthering or facilitating a criminal endeavor.

95. The wire approval process, as stated previously, was intended to prevent mistakes, not to detect wrongdoing, and there is no evidence to the contrary.

## IV. RECOMMENDATIONS

96. Defendant's Motion under 28 U.S.C. § 157(C)(1) and FED. R. BANKR. PROC. 7052(c)(2) [Dkt. # 356] should be granted.

97. All causes of action asserted by DTDF in this lawsuit should be determined in favor of Wells Fargo and DTDF should take nothing by its claims in this lawsuit.

Dated: September 28, 2010

Respectfully submitted,

By */s/ Michael W. O'Donnell*

Dean V. Fleming, TX State Bar No. 07122100
Email: dfleming@fulbright.com
Steve A. Peirce, TX State Bar No. 15731200
Email: speirce@fulbright.com
Michael W. O'Donnell, TX Bar No. 24002705
Email: modonnell@fulbright.com
Thomas Countryman, TX Bar No. 04888100
Email: tcountryman@fulbright.com
Ronald D. Smith, TX Bar No. 24056344
Email: rsmith@fulbright.com
**FULBRIGHT & JAWORSKI L.L.P.**
300 Convent Street, Suite 2200
San Antonio, TX 78205-3792
Telephone: (210) 224-5575
Facsimile: (210) 270-7205

Berry D. Spears, TX State Bar No. 18893300
**FULBRIGHT & JAWORSKI L.L.P.**
600 Congress Avenue, Suite 2400
Austin, TX 78701
Telephone : (512) 474-5201
Facsimile: (512) 536-4598
Email: bspears@fulbright.com

Kent F. Larsen
Nevada Bar No. 3463
**SMITH LARSEN & WIXOM**
Hills Center Business Park
1935 Village Center Circle
Las Vegas, NV 89134
Telephone: (702) 252-5002
Facsimile: (702) 252-5006
Email: kfl@slwlaw.com

**ATTORNEYS FOR WELLS FARGO BANK, N.A.**

## CERTIFICATE PURSUANT TO LOCAL RULE 9021

In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

___ The court has waived the requirement of approval under LR 9021.

___ This is a chapter 7 or 13 case, and either with the motion, or at the hearing, I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below.

_x_ This is a chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below.

___ I certify that I have served a copy of this order with the motion, and no parties appeared or filed written objections.

| | | |
|---|---|---|
| Approved: | William T. Reid IV | /s/ William T. Reid IV |
| Approved: | Lisa S. Tsai | /s/Lisa S. Tsai |
| Approved: | Joshua J. Bruckerhoff | /s/ Joshua J. Bruckerhoff |

DATED: September 28, 2010

/s/ Dean V. Fleming

/s/ Michael W. O'Donnell

Attorneys for Defendant

# CERTIFICATE OF NOTICE

```
District/off: 0978-2          User: lyonsmk            Page 1 of 1              Date Rcvd: Oct 26, 2010
Case: 08-01135                Form ID: pdf928          Total Noticed: 2

The following entities were noticed by first class mail on Oct 28, 2010.
aty          +Berry D. Spears,   Fulbright & Jaworski L.L.P.,   600 Congress Avenue, Suite 2400,
               Austin, TX 78701-3271
             +ERIN E JONES,   909 FANNIN STE 1500,   DALLAS, TX 77010-1026

The following entities were noticed by electronic transmission.
NONE.                                                                                    TOTAL: 0

           ***** BYPASSED RECIPIENTS *****
NONE.                                                                                    TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Oct 28, 2010** **Signature:** Joseph Speetjens